UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
SIENNA, LLC,                            :
                        Plaintiff,      :
                                        :     06 Civ. 3364 (DLC)
            -v-                         :
                                        :     OPINION & ORDER
CVS CORPORATION and EVERSTAR            :
MERCHANDISE CO., LTD.,                  :
                        Defendants.     :
                                        :
----------------------------------------X

Appearances

For the Plaintiff:
Neil M. Zipkin
Richard S. Mandaro
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016

For the Defendants:
Michael E. McCabe, Jr.
Barry J. Herman
Robert C. Nissen
Oblon, Spivak, McClelland, Maier & Neustadt, P.C.
1940 Duke Street
Alexandria, VA 22314

Jeffrey A. Schwab
John H. Choi
Abelman, Frayne & Schwab
666 Third Avenue
New York, NY 10017


DENISE COTE, District Judge:

     This patent case concerns twinkling lights.  Strings of

lights that "twinkle" are in fact composed of both twinkling and

steady-burn light bulbs.  This design is necessary since too

many twinkling bulbs in a single string create a risk of fire. Addressing this danger, the plaintiff's invention prevents the consumer from substituting twinkling light bulbs for steady-burn bulbs by designing an incompatible, non-standard shape for the twinkling light bulb and its socket.  The defendants have copied the invention.  They contend that they have not actually infringed the plaintiff's patent, however, because they have also added a few hybrid sockets to their strings of lights, that is, sockets which accept both the standard and non-standard shaped bulbs.  These additions are inadequate to escape a finding of infringement.

Plaintiff Sienna, LLC ("Sienna") brought this action in May 2006 against CVS Corporation ("CVS") and Everstar Merchandise Co., LTD. ("Everstar"), alleging that defendants have infringed Sienna's United States Reissued Patent No. RE38,909 (the "'909 Patent"), which covers a twinkle light set.  Defendants bring this motion for summary judgment, arguing that the '909 Patent is invalid for indefiniteness, and that their twinkle light sets do not in any event infringe the patent.  Plaintiff cross-moves for summary judgment.  For the reasons stated below, plaintiff's motion for summary judgment is granted.

Background

There are few factual disputes.  Where they exist, the evidence is taken in the light most favorable to the defendants.

The Problem

The '909 Patent is a reissue of United States Patent No. 6,474,841 (the "'841 Patent"), which was invented by Sienna's Chief Engineer Najeh Rahman ("Rahman").  The object of the '841 and '909 Patents was to provide a safer twinkle light set. Decorative light sets typically have some combination of three different types of light bulbs:  steady-burn bulbs, flashing bulbs, and individual flashing or "twinkle" bulbs.  A steady-burn bulb stays lit as long as the light set is plugged in.  A flashing bulb has a filament that opens and closes as the bulb heats and cools, causing the lamp to cycle off and on.  Because most light sets are wired in a series like a chain, if there is one flashing bulb in the series, that bulb causes all the bulbs in a light string to cycle on and off with the flashing bulb and flash simultaneously.

In contrast, a twinkle bulb flashes on and off individually.  It has an internal shunt circuit which allows the electricity to continuously flow through the bulb so that the remaining bulbs in the circuit can stay lit even when the twinkle bulb is off.  This feature, however, creates a risk of

fire.  Because the resistance in the shunt circuit is much lower
than the resistance in a filament, if a large number of twinkle
bulbs happen to flash off simultaneously, the current passing
through the entire light set can increase significantly.  To
avoid this potentially dangerous situation, manufacturers limit
the number of twinkle bulbs to less than half of the bulbs in a
light set.  The '841 Patent was designed to prevent consumers
from increasing the number of twinkle bulbs in a set by
substituting a twinkle bulb for a steady-burn bulb.

The '841 Patent

    The '841 Patent included only eight claims.  In a June 4,
2002 Final Office Action, the U.S. Patent and Trademark Office
("PTO") rejected the '841 application because inter alia it
lacked definitions for certain terms and for obviousness.
Sienna filed an Amendment that added definitions for terms such
as standard bulb socket, non-standard bulb socket, and non-
standard twinkle bulb.  The application was then approved and
the '841 Patent was issued on November 5.

    Due to the PTO's error, however, the '841 Patent as issued
failed to include any of the definitions Sienna had provided.
In addition, Sienna found that the claims in the '841 Patent
included an unnecessary limitation because the patent required
not only that standard bulb sockets only receive standard bulbs,

4

but also that non-standard bulb sockets receive only non-standard bulbs, when there is no harm in having a standard bulb fit into a non-standard bulb socket.  Therefore, Sienna sought to reissue the patent with the definitions added and without the unnecessary limitation.

Subsequent to filing the reissue application, Sienna learned of a twinkle light set manufactured by GE (the "GE light set").  Sienna filed an Information Disclosure Statement, disclosing the GE light set as prior art.  The GE light set consisted of a string of lights with both twinkle and steady-burn bulbs.  The twinkle bulbs had bulb bases and sockets that were colored dark green and "coordinatingly keyed"; the steady-burn bulbs and sockets were colored light green and were round.  Sienna asserted that in the GE light set, a twinkle bulb could be placed in a steady-burn bulb's socket "without the use of force," which according to Sienna's counsel Neil M. Zipkin ("Zipkin"), "defeat[ed] the safety provisions disclosed and claimed" in the Sienna invention.

In an October 26, 2004 interview with a PTO examiner, Zipkin asserted that "with extra force" he could insert a twinkle bulb into a steady-burn bulb's socket in a GE light set. The PTO examiner further noted that "ecessive [sic] force" was required for "both insertion and detachment of the bulb base from the assembly" in the GE light set.  The examiner concluded

that Sienna needed to claim "additional structural limitations
which would make it technically infeasible to make the bulb base
of one category insertable in the socket of the other category."
Sienna amended its patent application accordingly.

The '909 Patent

Claim 1 of the '909 Patent describes (emphasis added):

A twinkle light set comprising:
    alternately from one end of said light set to an
opposite end of said light set, at least one standard bulb
socket electrically operatively receiving a standard bulb,
whether a conventional steady burning or a conventional
flashing bulb, and at least one non-standard bulb socket
electrically operatively receiving a non-standard twinkle
bulb;
    said standard and non-standard bulb sockets being
configured and dimensioned to electrically operatively
receive only standard and non-standard bulbs, respectively;
    said standard bulb socket being configured and
dimensioned and not to electrically operatively receive a
non-standard bulb because of interference of a laterally
larger exterior dimension of the non-standard bulb with a
laterally smaller interior dimension of said standard bulb
socket, notwithstanding the use of excessive manual force
to attempt to overcome such interference.

The specification provides six definitions, including
definitions for a standard bulb socket, a non-standard bulb
socket, and a non-standard twinkle bulb.  A standard bulb socket
is defined as (emphasis added):

a conventional socket configured and dimensioned to
operatively receive a conventional standard bulb, --
whether it be a conventional flashing lamp, an individual-
flashing lamp or a steady-burning lamp -- and to not
operatively receive a non-standard twinkle bulb according
to the present invention.

A non-standard bulb socket is defined as (emphasis added):

> a socket according to the present invention configured and
> dimensioned to operatively receive only a non-standard
> twinkle bulb according to the present invention and not to
> operatively receive a conventional bulb.

Finally, a non-standard twinkle bulb is defined as (emphasis added):

> a twinkle bulb according to the present invention which is
> configured and dimensioned to be operatively received only
> in a non-standard bulb socket according to the present
> invention and not to be operatively received in a standard
> bulb socket.

On December 6, 2005, the PTO issued the '909 reissue patent.


The Accused Products

Sienna filed this action on May 3, 2006, alleging that
defendants have made and sold various twinkle light sets that
infringe the '909 Patent.  Everstar sells decorative lights
primarily for the holiday season, including twinkle light sets.
Three of its models include 50-light sets sold by Wal-Mart and
CVS (the "Wal-Mart light set" and the "CVS light set") and a
450-light set sold by Costco (the "Costco light set").

The Wal-Mart light set includes forty steady-burn bulbs and
ten twinkle bulbs.[1]  Thirty-eight of the forty steady-burn bulbs

---

[1] The defendants object to some of the terminology plaintiff's
affiant Rahman has used in his submission on these motions.
Because the objection concerns only terminology, and the

are mounted in sockets into which none of the ten twinkle bulbs can be mounted.  The other two steady-burn bulbs, however, are mounted in hybrid sockets, one at each end of the light string, into which not only the steady-burn bulbs but also the twinkle bulbs can be mounted.[2]

The CVS light set is similarly constructed.  Thirty-eight of its fifty lights are steady-burn bulbs and twelve are twinkle bulbs.  Two of the steady-burn bulbs -- and again, only two -- are mounted in hybrid sockets, one at each end of the light string, into which twinkle bulbs can also be mounted.

Finally, the Costco light set consists of three strings of 150 lights each.  In each of the strings of 150 lights, 120 are steady-burn bulbs and thirty are twinkle bulbs.  Of those 120 steady-burn bulbs, 114 are mounted in sockets into which none of the thirty twinkle bulbs can be mounted.  Six of the steady-burn bulbs, however, are mounted in hybrid sockets, positioned at the first, forty-sixth, fifty-first, ninety-sixth, 101st, and 146th light sockets.  Not only the steady-burn bulbs but also the twinkle bulbs can be mounted into these hybrid sockets.

---

essential facts are undisputed, it is unnecessary to address defendants' objections.

[2] Sienna names these sockets "combo sockets," but defendants claim they are "standard" sockets.  The name of the socket is irrelevant.  What is essential is that they be accurately described, and there is no dispute that the description of their function here is accurate.

Overall, except for the two hybrid sockets out of fifty at the ends of the CVS and the Wal-Mart light sets, and the six hybrid sockets out of 120 in the Costco light set, the bulbs in these light sets are all mounted in sockets in which only bulbs of their type can be mounted, because the steady-burn and twinkle bulb bases and sockets are configured with different projections and recesses.  The two or six hybrid sockets have a different construction, and although they arrive out of the box with steady-burn bulbs mounted in them, any of the twinkle bulbs in the light sets can be mounted into these few sockets because these larger-sized sockets are designed to accept both types of bulbs.

Summary Judgment Motions

In support of their motion for summary judgment, the defendants contend that because the twinkle bulbs in each of their light sets can be mounted in the hybrid sockets which hold both steady-burn bulbs and twinkle bulbs, their light sets do not contain "non-standard twinkle bulbs" as required by the '909 Patent's claims.  In addition, defendants also claim that the '909 Patent is invalid for indefiniteness, because (1) a phrase in Claim 1 -- "use of excessive manual force" -- is indefinite and (2) the terms used in the patent cannot be construed. Plaintiff cross-moves for summary judgment, claiming defendants'

9

light sets infringe its '909 Patent and that the '909 Patent is
not invalid.


# Discussion

Summary judgment may not be granted unless all of the
submissions taken together "show that there is no genuine issue
as to any material fact and that the moving party is entitled to
a judgment as a matter of law."  Rule 56(c), Fed. R. Civ. P.
The moving party bears the burden of demonstrating the absence
of a material factual question, and in making this determination
the court must view all facts in the light most favorable to the
non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323
(1986).  When the moving party has asserted facts showing that
the non-movant's claims cannot be sustained, the opposing party
must "set forth specific facts showing that there is a genuine
issue for trial," and cannot rest on the "mere allegations or
denials" of the movant's pleadings.  Rule 56(e), Fed. R. Civ. P.;
accord Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d
Cir. 2006).  "If this court determines that no material facts
remain in dispute, it may proceed to determine entitlement to
judgment under the law."  SRAM Corp. v. AD-II Eng'g, Inc., 465
F.3d 1351, 1357 (Fed. Cir. 2006).  Even though patent
infringement is a fact-intensive inquiry, "[s]ummary judgment is

appropriate when it is apparent that only one conclusion as to infringement could be reached by a reasonable jury." TechSearch, L.L.C. v. Intel Corp., 286 F.3d 1360, 1369 (Fed. Cir. 2002).

A. Infringement

"A determination of infringement requires a two-step analysis.  First, the court determines the scope and meaning of the patent claims asserted, and then the properly construed claims are compared to the allegedly infringing device." Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc., 467 F.3d 1370, 1375 (Fed. Cir. 2006) (citation omitted).  "Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents."  PC Connector Solutions LLC v. SmartDisk Corp., 406 F.3d 1359, 1364 (Fed. Cir. 2005).

In construing a patent claim, which is a question of law, a court "should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history."  Id. at 1362 (citation omitted).  If the meaning of the claim is clear from the intrinsic evidence alone, resort to extrinsic evidence is

improper.  Boss Control, Inc. v. Bombardier Inc., 410 F.3d 1372,
1377 (Fed. Cir. 2005).  "Words of a claim are generally given
their ordinary and customary meaning.  A patentee, however, can
act as his own lexicographer to specifically define terms of a
claim contrary to their ordinary meaning."  Abraxis Bioscience,
467 F.3d at 1376 (citation omitted).  Even when the inventor
acts as its own lexicographer, its definitions "must be
understood and interpreted by the court as they would be
understood and interpreted by a person in that field of
technology."  Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed.
Cir. 2005) (en banc) (citation omitted).  In addition, "the
specification is always highly relevant to the claim
construction analysis.  Usually, it is dispositive; it is the
single best guide to the meaning of a disputed term."  Id. at
1315 (citation omitted).  Although courts use the specification
"to interpret the meaning of a claim," at the same time courts
must "avoid the danger of reading limitations from the
specification into the claim" itself.  Id. at 1323.  Under the
theory of literal infringement, the patentee proves infringement
by demonstrating that the accused device contains each and every
limitation of the claim.  Abraxis Bioscience, 467 F.3d at 1378.

     Sienna has shown that it is entitled to summary judgment on
its claim of infringement.  Claim 1 describes a light set that
consists of at least one standard bulb socket and at least one

non-standard bulb socket, and that these bulb sockets are configured to receive only standard and non-standard twinkle bulbs, respectively.  According to the specification, a purpose of the invention is "to provide such a light set which precludes the user from replacing standard steady-burning bulbs with non-standard twinkle bulbs."  Each of the defendants' sets contains at least one standard and one non-standard bulb socket, each of which is configured in a way that prevents insertion of the wrong bulb.  The defendants' products literally infringe the '909 Patent.

Relying on their addition of a few hybrid sockets to each string of lights, defendants maintain that their light sets do not infringe.  According to the defendants, because non-standard twinkle bulbs are defined in the specification as bulbs that are received "only in a non-standard bulb socket," the twinkle bulbs in their light sets are not non-standard twinkle bulbs since they can be received not only in the sockets configured for the twinkle bulbs but also in the hybrid sockets, that is, sockets which receive both steady-burn and twinkle bulbs.  Because their light sets do not contain "non-standard twinkle bulbs," as that term is defined in the patent, the defendants claim that there is no infringement.

"It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims

13

is found in the accused device," however.  <u>SunTiger, Inc. v.</u>
<u>Scientific Research Funding Group</u>, 189 F.3d 1327, 1336 (Fed.
Cir. 1999) (citation omitted).  "If a claim reads merely on a
part of an accused device, that is enough for infringement."
<u>Id.</u>  The addition of a few hybrid sockets does not alter the
existence of literal infringement or even change in any material
way the manner in which the light set works.  Because they use
the plaintiff's invention, the defendants' sets still prevent
consumers from replacing all but a few steady-burn bulbs with
twinkle bulbs.  The hybrid sockets have been added in a
calculated but unsuccessful attempt to take the defendants'
light sets out of the literal language of the claim.  They have
no other purpose or benefit.


B. Indefiniteness

    Defendants claim that the '909 Patent is invalid because it
is indefinite under 35 U.S.C. § 112.  "A patent is presumed
valid, and the burden of establishing invalidity as to any claim
of a patent rests upon the party asserting such invalidity.
Clear and convincing evidence is required to invalidate a
patent."  <u>Aero Products Int'l, Inc. v. Intex Recreation Corp.</u>,
466 F.3d 1000, 1015 (Fed. Cir. 2006).

    Whether a claim is sufficiently definite to satisfy the
statutory requirements of patent law is a question of law.  <u>Id.</u>

"If a claim is not amenable to construction, the claim is invalid as indefinite," but "[i]f a claim is amenable to construction, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, the claim is not indefinite." Id. at 1016 (citation omitted).

Defendants point to two parts of the '909 Patent as indefinite. First, the defendants claim that the claim language "notwithstanding the use of excessive manual force" is indefinite because "excessive" is a comparative and subjective term, and the clause impermissibly mixes statutory classifications by including an apparatus limitation and a method of use limitation. Second, the defendants claim the '909 Patent is indefinite because the definitions for standard bulb socket, non-standard bulb socket, and non-standard twinkle bulb are circular, negative, absurd, and non-sensical.

1. "Excessive Manual Force"

Whether a claim term is sufficiently definite depends on whether the terms can be given "any reasonable meaning." Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1347 (Fed. Cir. 2005). General principles of claim construction apply: intrinsic evidence should guide the court, but courts are authorized to rely on extrinsic evidence as well. Id. at

1348. "When a word of degree is used the district court must determine whether the patent's specification provides some standard for measuring that degree." Id. at 1351 (citation omitted). "The scope of claim language cannot depend solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention." Id. at 1350. Thus in Datamize, the claim term "aesthetically pleasing" was declared indefinite, because the term "does not just include a subjective element, it is completely dependent on a person's subjective opinion." Id.

Not all subjective or comparative terms, however, are impermissibly indefinite in a patent claim.

> [W]ords of approximation . . . such as "approach each other," "close to," "substantially equal," and "closely approximate" are ubiquitously used in patent claims and [] such usages, when serving reasonably to describe the claimed subject matter to those of skill in the field of the invention and to distinguish the claimed subject matter from the prior art, have been accepted in patent examination and upheld by the court.

Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc., 340 F.3d 1298, 1310-11 (Fed. Cir. 2003) (citation omitted). "[W]hile ideally, all terms in a disputed claim would be definitively bounded and clear, such is rarely the case in the art of claim drafting." Id. at 1311. When considered in the context of the primary intrinsic evidence and the secondary extrinsic evidence, courts have found terms such as "generally

16

parallel," id. at 1310-11; "substantially constant wall
thickness," Verve, LLC v. Crane Cams, Inc., 311 F.3d 1116, 1119-
20 (Fed. Cir. 2002); and "substantially uniform," Ecolab, Inc.
v. Envirochem, Inc., 264 F.3d 1358, 1367 (Fed. Cir. 2001), to be
sufficiently definite in a patent claim.

The term "excessive manual force" is similarly definite.
While the term is "mathematically imprecise," Anchor Wall, 340
F.3d at 1310, the meaning of the term is sufficiently clear.
The purpose of the invention as described in the specification
(to "preclude[] the user from replacing standard steady-burning
bulbs with non-standard twinkle bulbs") and the prosecution
history (in particular, Sienna's efforts to distinguish its
invention from the prior art GE light set) assists in providing
a "reasonable meaning" to the claim term "excessive manual
force."

The dictionary definition of the word excessive is entirely
consistent with the obvious import of the term.  "Excessive" is
defined as "exceeding a normal, usual, reasonable, or proper
limit." Am. Heritage Dictionary (4th ed. 2000).  Considered in
the context of the intrinsic evidence, the term "reasonably . .
. describe[s] the claimed subject matter to those of skill in
the field of the invention and . . . distinguish the claimed
subject matter from the prior art." Anchor Wall, 340 F.3d at
1311.

Defendants argue that the term "excessive manual force" is too imprecise since not all individuals are equally strong.  The defendants are impermissibly raising the standard that is required to meet definiteness; mathematical precision is not required.  See id. at 3110.  In the context of forcing a light bulb into a socket, the ordinary meaning of the word "excessive" is sufficiently clear and definite for one skilled in the art.

Defendants further contend that the clause "notwithstanding the use of excessive manual force to attempt to overcome such interference" is an impermissible mix of statutory classifications.  The Federal Circuit has recently held that "reciting both an apparatus and a method of using that apparatus renders a claim indefinite under [35 U.S.C.] section 112," because "a manufacturer or seller of the claimed apparatus would not know from the claim whether it might also be liable for contributory infringement because a buyer or user of the apparatus later performs the claimed method of using the apparatus."  IPXL Holdings, L.L.C. v. Amazon.com, Inc., 430 F.3d 1377, 1384 (Fed. Cir. 2005).[3]

_____

[3] In IPXL, a claim reading "[t]he system of claim 2, wherein the predicted transaction information comprises both a transaction type and transaction parameters associated with the transaction type, and the user uses the input means to either change the predicted transaction information or accept the displayed transaction type and transaction parameters," was held to impermissibly mix both a system and a method.  IPXL, 430 F.3d at 1384.

The '909 Patent does not recite both an apparatus and a method.  The clause at issue is not a separate method step, but rather is descriptive of the apparatus itself.  See <u>Yodlee, Inc.</u> <u>v. Cashedge, Inc.</u>, No. C 05-01550 SI, 2006 WL 3456610, at * 4 (N.D. Cal. Nov. 29, 2006) (describes "<u>capability</u> of the apparatuses"); <u>Collegenet, Inc. v. XAP Corp.</u>, 442 F. Supp. 2d 1036, 1062 (D. Or. 2006) ("functional limitation"); <u>Collaboration Props., Inc. v. Tandberg ASA</u>, No. C 05-01940 MHP, 2006 WL 1752140, at *6 (N.D. Cal. June 23, 2006) ("statement of functionality").  Therefore, the clause "notwithstanding the use of excessive manual force to attempt to overcome such interference" is not indefinite under Section 112.

2. Construction of "bulb" and "socket" claim terms

Finally, defendants argue that the claim terms "standard bulb socket," "non-standard bulb socket," and "non-standard twinkle bulb" cannot be construed.  Their only argument in this connection that merits any discussion is the argument that the '909 Patent encompasses an impermissible negative limitation.  Relying on <u>In re Schechter</u>, 205 F.2d 185, 188 (C.C.P.A. 1953), the defendants point to the fact that each of the bulb sockets and bulbs are defined as being of a type that receives or is received by one type of bulb or socket, while "not operatively

receiv[ing]" or "not to be operatively received in" the other type.

In re Schechter has no relevance to the claims in the '909 Patent.  In that case the claim attempted to cover all of a class of compounds except those shown in prior art.  Id.  There is no per se ban on the use of negative limitations, and In re Schechter does not suggest that one exists.  See, e.g., In re Wakefield, 422 F.2d 897, 904 (C.C.P.A. 1970) (finding a claim still definite despite a negative limitation); see also SmithKline Beecham Corp. v. Apotex Corp., 403 F.3d 1331, 1363 (Fed. Cir. 2005) (suggesting patentees incorporate negative limitations such as "non-natural" or "non-human" into their claims); Animal Legal Defense Fund v. Quigg, 932 F.2d 920, 923 (Fed. Cir. 1991) ("The use of a negative limitation to define the metes and bounds of the claimed subject matter is a permissible form of expression.").  The defendants have not shown that the use of negatives in the definitions in the '909 Patent's specifications creates any ambiguity or otherwise requires a finding of invalidity.

## Conclusion

Summary judgment is granted in favor of the plaintiff on its claim that defendants have infringed the '909 Patent and its motion to dismiss the defendants' challenges to the validity of

20

the patent.   The defendants' motions for summary judgment are denied.

     SO ORDERED:

Dated:    New York, New York
          January 3, 2007

                                    _____
                                      DENISE COTE
                    United States District Judge

21